**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JACQUELINE SHEARE and TREVOR R. SHEARE,

      Plaintiffs,

          v.

BOROUGH OF OLYPHANT and OFFICER LEWIS KLINE,

      Defendants.

CIVIL ACTION NO. 3:11-CV-1639

(JUDGE CAPUTO)

## MEMORANDUM

Defendants Borough of Olyphant and Officer Lewis Kline move to dismiss the Sheares' complaint. Mrs. Sheare alleges she was falsely arrested for criminal trespass after money went missing from her sister's home. Olyphant and Officer Kline argue that Mrs. Sheare has failed to provide adequate factual allegations to support her false arrest claim. Olyphant additionally argues the Sheares' have failed to state a *Monell* claim against it for failing to properly train its police officers. The Court agrees and will dismiss both these claims. The Court will also decline supplemental jurisdiction over the Sheares' state law claims.

## BACKGROUND

The Sheares allege as follows.

The Sheares are residents of Susquehanna County, Pennsylvania. Olyphant is a political subdivision of the Commonwealth of Pennsylvania. Olyphant manages law enforcement in the borough through the Olyphant Police Department, and Lewis Kline is an officer with the department.

In early November 2010, Mrs. Sheare made plans with her sister Kathleen Zinskie,

to travel together to Elizabethtown, Pennsylvania to visit their sister Colleen. They were all then to travel together to Maryland for a family gathering at their sister Mary's home. Around noon on November 7, 2010, Mrs. Sheare arrived at Kathleen's home in Olyphant. She saw both of the family's trucks in the driveway and assumed they were home. She then went in the unlocked garage and knocked on the interior door. Finding no one home, she assumed they were running errands. She used the bathroom and then sat on a couch and read, waiting for their return.

About a half an hour later, Mrs. Sheare's nephew, Nicholas Zinskie came home and told her that Kathleen and her husband had already left for Elizabethtown and had left a note for her on the garage door. They went out to the garage and Mrs. Sheare then read the note and left. She met up with Kathleen, Colleen, and their husbands in Elizabethtown. They all left for Maryland that evening.

A few days later, Kathleen called Mrs. Sheare to ask her if she had been in the upstairs of the Zinskie home or seen any money lying around. Mrs. Sheare told her she had not. Kathleen then told her $1,000 was missing from an envelope in her husband Harry's office. About a week later, Officer Kline called Mrs. Sheare and asked her some questions about the missing money. He then asked her to come to the police station for an interview. When she arrived, she was taken into an interview room and was advised she could leave at any time. Officer Kline immediately confronted Mrs. Sheare, accusing her of lying repeatedly about her relationship with her sister, how frequently she was at the Zinskie home, and even what magazine she had read while waiting for them to return home. He told Mrs. Sheare he was good friends with Harry Zinskie and that he knew she had taken the money. He also said that Nicholas Zinski had stated that he first saw Mrs. Sheare as

2

she was exiting the garage, and that she seemed to be in a hurry.  Officer Kline said that if she did not return the money, she would be charged with a felony that would hurt her employment with the United States Postal Service.  Mrs. Sheare continually denied taking anything from the Zinskie home.  Due to Officer Kline's threatening and abusive manner, Mrs. Sheare was extremely shaken up by the interview.  The next day, she was taken to the hospital and underwent a cardiac catherization after experiencing chest pain.  Several days later, she was charged with criminal trespassing under 18 Pa.C.S. § 3503(A)(1)(I).  The charge was later dismissed.

In the affidavit of probable cause completed by Officer Kline, he states that he was called to the Zinskie home on November 15, 2010 on a reported theft of money and that both Mr. and Mrs. Zinskie suspected Mrs. Sheare of the theft. (Def. Ex. 1.)  The affidavit also states that Nicholas Zinskie arrived home on November 7, 2010 to find Mrs. Sheare walking out of the garage.  After being asked where his parents were, Nicholas pointed to a "rather prominent note" on the garage door.  Officer Kline further states in the affidavit that the Zinskies both told him repeatedly that Mrs. Sheare "did not have their permission to enter the residence on Sunday, 11/7/10." (Def. Ex. 1.)

The Sheares filed their complaint in August 2011.  In their complaint, Mrs. Sheare alleges false arrest against Officer Kline and a *Monell* claim against Olyphant, both under 42 U.S.C. § 1983 (counts one and two).  She also alleges abuse of process and intentional infliction of emotional distress under state law (counts three and four).  Finally, her husband alleges loss of consortium against Officer Kline and Olyphant (count five).  Olyphant and Officer Kline then filed a motion to dismiss.  The motion has been briefed and is ripe for review.      .

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether a plaintiff will ultimately prevail.  *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp v.Twombly*, 550 U.S. 544, 555 (2007)).  Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211.  Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are

4

sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft* , 129 S. Ct. at 1950.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

5

## DISCUSSION

**I.    False Arrest under 42 U.S.C. § 1983**

18 Pa.C.S.A. § 3503 states, in pertinent part, that a person is guilty of criminal trespass if, "knowing that he is not licensed or privileged to do so, he enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof."

Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

In order to bring a successful § 1983 claim, a plaintiff must demonstrate (1) that the challenged conduct was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or federal law. *See Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir.1993).

In count one, Mrs. Sheare alleges that Officer Kline violated her Fourth Amendment rights under 42 U.S.C. § 1983 by falsely arresting her.  The central issue in determining liability in a § 1983 action based on a claim of false arrest is "whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir.1988). Whether the person actually committed the charged offense is irrelevant, *id.*, as is the outcome of the prosecution of the state court charges. *See Roa v. City of Bethlehem*, 782 F.Supp. 1008, 1015 (E.D.Pa.1991).

It is well-settled that probable cause to arrest generally exists when a police officer

makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment. *Baker v. McCollan*, 443 U.S. 137, 144 (1979).

A section 1983 plaintiff who challenges the validity of a warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). *See Lippay v. Christos*, 996 F.2d 1490, 1502, 1504 (3d Cir.1993). This is true whether the alleged falsehood is an affirmative misrepresentation or a material omission. *See, e.g., United States v. Frost*, 999 F.2d 737, 742-43 & n. 2 (3d Cir.1993).

Under *Franks* and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. *See Franks*, 438 U.S. at 171-72; *Frost*, 999 F.2d at 742-43.

Here, the Sheares' complaint is bereft of any factual allegations supporting the false arrest claim.  Count one contains only conclusory language that must be disregarded for purposes of deciding a motion to dismiss.  Looking at the complaint under the *Franks* test, the Sheares allege Officer Kline "knowingly stated deliberate falsehoods" and "acted with a reckless disregard for the truth."  But they nowhere state *what* those falsehoods were or *how* he disregarded the truth.  Such allegations are only a threadbare recital of the elements of a § 1983 false arrest claim.

More basically, it is hard to see how there was not probable cause.  All 18 Pa.C.S. § 3503 requires is that a person (a) enter, (b) gain entry by subterfuge, or (c) surreptitiously remain in a building knowing they do not have a license or privilege to do so. Mrs. Sheare

nowhere alleges she had permission to enter the residence.  That admission satisfies (a). She appears to read the statute conjunctively, requiring the person to do (a), (b), *and* (c). But that is incorrect.  The plain-language of the statute is disjunctive, meaning a person can be guilty of criminal trespass by doing (a) *or* (b) *or* (c) knowing one does not have permission.

Since Mrs. Sheare has failed to sufficiently allege false arrest, this claim will be dismissed.

## II.    *Monell* claim against Olyphant

In *Monell v. Department of Soc. Serv. of City of New York*, 436 U.S. 658, 690–91 (1978), the Supreme Court held that a municipality will not be held liable for the unconstitutional acts of a state actor unless the conduct that caused the harm was pursuant to a government policy, custom, or practice.

"[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir.1997)(citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Failure to train can be the basis for liability if the failure to train reflects a deliberate or conscious choice by the municipality. *See City of Canton*, 489 U.S. at 389. To attach liability to a municipality, the identified deficiency in the training program must be closely related to the ultimate injury. *See id.* at 391. Proving that an injury could have been avoided if a police official had better or more training is not enough to show municipal liability. *See id.* Otherwise, "[s]uch a claim could be made about almost any encounter resulting in injury." *Id.*

Additionally, "adequately trained officers occasionally make mistakes; the fact that

they do says little about the training program or the legal basis for holding the city liable." *Id.* at 391. "Failure to train ... municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *See Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir.2000)(per curiam)(citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 408-09 (1997)). While it is possible to maintain a failure to train claim without showing a pattern, the Supreme Court has stated that the burden on a plaintiff in such a case is high.

Here, again, the allegations in the complaint are purely conclusory. Specifically, "Defendant Borough and Defendant Police Department does [sic] not adequately train its [sic] officers in the preparation of and in the advancement of criminal proceedings." And, "Defendant Borough does not adequately train its officers that they may only charge a person with a crime if there is probable cause to believe that a person committed the crime." Even crediting these allegations as sufficiently factual, there is nothing in the complaint that demonstrates, even if Office Kline acted improperly, his actions were anything more than an isolated incident. This claim is simply the type of vague "if they had been trained better, this would not have happened" argument prohibited by the case law. Since the allegations fail to show a sufficiently close relationship between the training program and Mrs. Sheare's injury, or that this was anything besides an isolated incident, this claim will also be dismissed.

## III.    State law claims

The Sheares' state law claims for abuse of process, intentional infliction of emotional distress, and loss of consortium will also be dismissed. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim or claims if the

district court has dismissed all claims over which it has original jurisdiction.  Since the Court will dismiss the false arrest and *Monell* claims – the sole basis of the Court's jurisdiction under 28 U.S.C. § 1331 –  it will also decline supplemental jurisdiction over the state law claims.

## IV.    Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp*., 293 F.3d 103, 108 (3d Cir.2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000)).  Therefore, the Court will give the Sheares twenty-one days to amend their complaint or it will be dismissed with prejudice.

## CONCLUSION

The Court will grant the motion to dismiss.  The complaint fails to sufficiently allege claims for false arrest and municipal liability under *Monell*.  The Court also declines to exercise jurisdiction over the remaining state law claims.  The Sheares have twenty-one days to amend their complaint.

An appropriate order follows.


  1/18/12                                                    /s/ A. Richard Caputo
Date                                                         A. Richard Caputo
                                                             United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACQUELINE SHEARE and TREVOR R.
SHEARE,

      Plaintiffs,

          v.

BOROUGH OF OLYPHANT and
OFFICER LEWIS KLINE,

      Defendants.

CIVIL ACTION NO. 3:11-CV-1639

(JUDGE CAPUTO)

## ORDER

     **NOW**, this ___18th___ day of January, 2012, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss (Doc. 7) is **GRANTED**.  Plaintiffs have **twenty-one (21) days** to amend their complaint.  If they  do not, it will be **DISMISSED with prejudice**.

                     /s/ A. Richard Caputo_____
                     A. Richard Caputo
                     United States District Judge