**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JACQUELINE SHEARE and TREVOR R.
SHEARE,

      Plaintiffs,

          v.

BOROUGH OF OLYPHANT and
OFFICER LEWIS KLINE,

      Defendants.

CIVIL ACTION NO. 3:11-CV-1639

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 15) filed by Defendants Borough of Olyphant ("Olyphant") and Officer Lewis Kline. Jacqueline Sheare ("Mrs. Sheare") alleges that she was falsely arrested for criminal trespass after money went missing from her sister's home. According to Mrs. Sheare, Officer Kline commenced criminal proceedings against her based on numerous known falsehoods that were necessary to establishing probable cause. As such, Mrs. Sheare and her husband commenced this action asserting a 42 U.S.C. § 1983 false arrest claim against Officer Kline and a *Monell* claim against Olyphant. Plaintiffs also assert state law claims for abuse of process, intentional infliction of emotional distress, and loss of consortium. Defendants have moved to dismiss the action in its entirety. Because Plaintiffs have adequately stated claims for false arrest, intentional infliction of emotional distress, and loss of consortium, Defendants' motion will be granted in part and denied in part.

## BACKGROUND

The facts as alleged in the Amended Complaint (Doc. 14) are as follows:

The Sheares are residents of Susquehanna County, Pennsylvania. (*Am. Compl.*, ¶

1)  Olyphant is a political subdivision of the Commonwealth of Pennsylvania. (*Id*. at ¶ 2.) Olyphant manages law enforcement in the borough through the Olyphant Police Department, and Lewis Kline is an officer with the department. (*Id*. at ¶¶ 3-7.)

In early November 2010, Mrs. Sheare made plans with her sister Kathleen Zinskie, to travel together to Elizabethtown, Pennsylvania to visit their sister Colleen. (*Id*. at ¶ 12.) They were all then to travel together to Maryland for a family gathering at their sister Mary's home. (*Id*.)  Around noon on November 7, 2010, Mrs. Sheare arrived at Kathleen's home in Olyphant. (*Id*. at ¶ 20.)  She saw both of the family's trucks in the driveway and assumed they were home. (*Id*. at ¶ 21.)  She then went in the unlocked garage and knocked on the interior door. (*Id*. at ¶ 22.) Finding no one home, she assumed they were running errands. (*Id*. at ¶ 23.)  She used the bathroom and then sat on a couch and read a magazine, waiting for their return. (*Id*. at ¶ 24.)  Prior to November 7, 2010, Kathleen's sister would routinely welcome Mrs. Sheare into her home. (*Id*. at ¶ 13.)  And, on November 7, 2010, Mrs. Sheare had express permision to enter the Zinskie home. (*Id*.)

About thirty minutes later, Mrs. Sheare's nephew, Nicholas Zinskie, came home and told her that Kathleen and her husband had already left for Elizabethtown and had left a note for her on the garage door. (*Id*. at ¶ 25.)  They went out to the garage and Mrs. Sheare then read the note and left. (*Id*. at ¶ 26.)  She met up with Kathleen, Colleen, and their husbands in Elizabethtown.  (*Id*. at ¶ 28.)  They all left for Maryland that evening. (*Id*. at ¶ 31.)

A few days later, Kathleen called Mrs. Sheare to ask her if she had been in the upstairs of the Zinskie home or seen any money lying around. (*Id*. at ¶ 35.).  Mrs. Sheare told her she had not. (*Id*.)  Kathleen then told her $1,000 was missing from an envelope in

2

her husband Harry's office. (*Id*.)

About a week later, Officer Kline called Mrs. Sheare and asked her some questions about the missing money. (*Id*. at ¶¶ 38-39)  He then asked her to come to the police station for an interview. (*Id*. at ¶ 40.)  When she arrived, she was taken into an interview room and was advised she could leave at any time. (*Id*. at ¶ 41.)  Officer Kline immediately confronted Mrs. Sheare, accusing her of lying repeatedly about her relationship with her sister, how frequently she was at the Zinskie home, and even what magazine she had read while waiting for them to return home. (*Id*. at ¶¶ 44-45.)  He told Mrs. Sheare he was good friends with Harry Zinskie and that he knew she had taken the money. (*Id*. at ¶ 46.)  He also said that Nicholas Zinskie had stated that he first saw Mrs. Sheare as she was exiting the garage, and that she seemed to be in a hurry. (*Id*. at ¶ 53.) Officer Kline said that if she did not return the money, she would be charged with a felony that would hurt her employment with the United States Postal Service. (*Id*. at ¶ 47.)  Mrs. Sheare continually denied taking anything from the Zinskie home. (*Id*. at ¶ 49.)

Due to Officer Kline's threatening and abusive manner, Mrs. Sheare was extremely shaken up by the interview. (*Id*. at ¶¶ 57-58.)   The next day, she was taken to the hospital and underwent a cardiac catherization after experiencing chest pain. (*Id*. at ¶ 58.)  Several days later, she was charged with criminal trespass under 18 Pa.C.S. § 3503(A)(1)(i). (*Id*. at ¶ 62.)  The charge was later dismissed by an Assistant Lackawanna County District Attorney prior to a preliminary hearing. (*Id*.)

In the Affidavit of Probable Cause completed by Officer Kline, he states that he was called to the Zinskie home on November 15, 2010 on a reported theft of money and that both Mr. and Mrs. Zinskie suspected Mrs. Sheare of the theft. (Doc. 17, *Br. Supp. Mot.*

*Dismiss Am. Compl.*, Ex. 1.)  The Affidavit also states that Nicholas Zinskie arrived home on November 7, 2010 to find Mrs. Sheare walking out of the garage. (*Id*.)  After being asked where his parents were, Nicholas pointed to a "rather prominent note" on the garage door. (*Id*.)  Officer Kline further states in the Affidavit that the Zinskies both told him repeatedly that Mrs. Sheare "did not have their permission to enter the residence on Sunday, 11/7/10." (*Id*.)

The Sheares initiated this action in August of 2011. (Doc. 1.)  In the complaint, Mrs. Sheare alleged a false arrest claim against Officer Kline and a *Monell* claim against Olyphant, both under 42 U.S.C. § 1983 (Counts One and Two).  She also alleged abuse of process and intentional infliction of emotional distress under state law (Counts Three and Four).  Finally, her husband alleged loss of consortium against Officer Kline and Olyphant (Count Five).  Olyphant and Officer Kline then filed a motion to dismiss. (Doc. 7.)  The Court granted the motion to dismiss the federal claims and declined to exercise supplemental jurisdiction over the remaining state law claims. (Doc. 13.)  Subsequently, Plaintiffs filed an Amended Complaint asserting the same five causes of action.  On February 27, 2012, Defendants filed a motion to dismiss the Amended Complaint. (Doc. 15.)  The motion has been briefed and is ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not

consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a

5

reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*.  The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## DISCUSSION

Defendants seek to dismiss Plaintiffs' Amended Complaint in its entirety for failure to state a claim upon which relief can be granted.  The Court will address the sufficiency of each Count of Plaintiffs' Amended Complaint *in seratim*.

## I.    False Arrest Pursuant to 42 U.S.C. § 1983

Defendants seek to dismiss Mrs. Sheare's false arrest claim and assert that the claim

lacks facial plausibility.  Pennsylvania's criminal trespass statute, 18 Pa.C.S.A. § 3503, states, in pertinent part, that a person is guilty of criminal trespass if, "knowing that he is not licensed or privileged to do so, he enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof." 18 Pa. C.S.A. § 3503(a)(1)(i).  A "crucial element" of the crime of criminal trespass is "the lack of permission or privilege to enter." *Commonwealth v. McBride*, 528 Pa. 153, 158, 595 A.2d 589, 591 (1991).

Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

In order to bring a successful § 1983 claim, a plaintiff must demonstrate (1) that the challenged conduct was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or federal law. *See Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir.1993).

In Count One, Mrs. Sheare alleges that Officer Kline violated her Fourth Amendment rights under 42 U.S.C. § 1983 by falsely arresting her.  The central issue in determining liability in a § 1983 action based on a claim of false arrest is "whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir.1988).  Whether the person actually committed the charged offense is irrelevant, *id.*, as is the outcome of the prosecution of the state court charges. *See Roa v. City of Bethlehem*, 782 F. Supp. 1008, 1015 (E.D. Pa.1991).

It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment. *See Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

A section 1983 plaintiff who challenges the validity of a warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). *See Lippay v. Christos*, 996 F.2d 1490, 1502, 1504 (3d Cir. 1993). This is true whether the alleged falsehood is an affirmative misrepresentation or a material omission. *See, e.g., United States v. Frost*, 999 F.2d 737, 742-43 n. 2 (3d Cir. 1993).

Under *Franks* and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. *See Franks*, 438 U.S. at 171-72; *Frost*, 999 F.2d at 742-43.

Here, unlike the Sheares' original complaint, Plaintiffs have adequately alleged facts supporting the false arrest claim. Under the *Franks* test, the Sheares allege Officer Kline "knowingly stated deliberate falsehoods" and "acted with a reckless disregard for the truth." The specific falsehoods alleged by Mrs. Sheare are that Officer Kline misrepresented in the Affidavit of Probable Cause that: (1) Plaintiff did not have their permission to enter the residence on Sunday, November 7, 2010; (2) Plaintiff said she did not have permission to enter and remain in the residence; (3) Plaintiff entered the Zinskie residence without

8

permission in the summer of 2010; and (4) he was informed by Kathleen Zinskie that Plaintiff lacked permission to enter the Zinskie residence. (*Am. Compl.*, ¶¶ 44, 65.)  And, these false facts all concern a crucial element of the criminal trespass statute- the permission or privilege of Mrs. Sheare to enter the Zinskie residence- which was necessary to Officer Kline's finding of probable cause.

In addition, Officer Kline raises the defense of qualified immunity in moving to dismiss Plaintiffs' Amended Complaint.   Under the doctrine of qualified immunity, government officials are immune from suit for damages where their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (internal quotations omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d  396 (1982)).   Qualified immunity protects government officials whether they have made a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Id*.  To determine whether qualified immunity applies, a court must examine "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*. at 232 (internal citations omitted).   A court may exercise its discretion in choosing which prong to address first, considering the circumstances of the particular case. *Id*. at 236.

As detailed above, the Court has already concluded that Mrs. Sheare has plausibly alleged that the Affidavit of Probable Cause contained material misrepresentations that, if otherwise not included, would not have established probable cause.  As a result, because Mrs. Sheare alleged that at the time Officer Kline completed the Affidavit "he knew facts that

should have changed his assessment of probable cause, the complaint adequately alleges that Defendant [Kline] did not act reasonably but, rather, unreasonably disregarded known, exculpatory information." *Anderson v. Goga*, No. 11-528, 2011 WL 4737569, at *7 (W.D. Pa. Oct. 5, 2011); *see also Lippay*, 996 F.2d at 1504.  The Court, therefore, will not dismiss Mrs. Sheare's claim against Officer Kline at this stage based on qualified immunity, and she will be permitted to proceed on her false arrest claim.

## II.     *Monell* Claim

Defendants seek dismissal of Mrs. Sheare's failure to train claim against Olyphant. In *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court held that a municipality will not be found liable for the unconstitutional acts of a state actor unless the conduct that caused the harm was pursuant to a government policy, custom, or practice.  Instead, a § 1983 claim against a municipality requires the plaintiff to: (1) identify a policy or custom that deprived him of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

Alternatively, "[i]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir.1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).  "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388.  Thus, failure to train

can be the basis for liability if the failure reflects a deliberate or conscious choice by the municipality. *See id*. at 389.  To attach liability to a municipality, the identified deficiency in the training program must be closely related to the ultimate injury. *See id.* at 391. Proving that an injury could have been avoided if a police official had better or more training is not enough to show municipal liability. *See id.*  Otherwise, "[s]uch a claim could be made about almost any encounter resulting in injury." *Id.*

Additionally, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* at 391.  "Failure to train . . . municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *See Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (per curiam) (citing *Bd. of Cnty. Comm'rs*, 520 U.S. at 408-09).  And, as the Supreme Court recently emphasized, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, – U.S. –, 131 S.Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011).

Here, Plaintiffs allege that Olyphant "does not adequately train its officers in the preparation of and in the advancement of criminal proceedings," (*Am. Compl.*, ¶ 75), and "does not adequately train its officers that they may only charge a person with a crime if there is probable cause to believe that a person committed the crime." (*Id*. at ¶ 76.)  Based on this lack of training, Olyphant "has been subject to numerous lawsuits concerning its officers and their lack of proper and adequate training." (*Id*.)  In addition, Plaintiffs assert that "Defendant Borough does not train its police officers at all and instead simply utilizes the Chief of Police without assuring that the Department uses its police powers appropriately and Constitutionally and provide adequate training and oversight to its police officers." (*Am. Compl.*, ¶ 77).

The allegations in the Amended Complaint are insufficient to state a *Monell* claim against Olyphant for its failure to adequately train its police officers.  First, Plaintiffs do not identify "any history of cognate violations allegedly committed by [Olyphant] employees." *Halterman v. Tullytown Borough*, No. 10-7166, 2011 WL 2411020, at *8 (E.D. Pa. June 14, 2011).  Instead, Plaintiffs simply allege that Olyphant has been subject to "numerous lawsuits" without facts identifying that these suits were similarly related to the Borough's alleged failure to train its officers that a suspect may only be charged with a crime if supported by probable cause.  Furthermore, Plaintiffs fail to set forth any non-conclusory allegations of "deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360.  Rather, the allegations of deliberate indifference are "little more than a 'naked assertion,' or 'a formulaic recitation of the elements of a cause of action.'" *Dempsey v. Bucknell Univ.*, No. 11-1679, 2012 WL 1569826, at *24 (M.D. Pa. May 3, 2012) (quoting *Iqbal*, 129 S. Ct. at 1949).  Ultimately, Plaintiffs' *Monell* claim is based on the "if they had trained better, this would not have happened" variety that the Court previously found insufficient in dismissing Plaintiffs' original complaint.  As such averments are insufficient to state a *Monell* claim, Count Two will be dismissed.  And, because Plaintiffs have previously been given leave to amend the *Monell* claim, it will be dismissed with prejudice.[1]

## III.    Abuse of Process Claim

Officer Kline seeks to dismiss Mrs. Sheare's abuse of process claim because she

---

[1]    Moreover, because it is well-settled that "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); *Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011), Plaintiffs request for punitive damages against Olyphant fails to state a claim.  And, to the extent that Plaintiffs' Amended Complaint asserts a *Monell* claim against the Olyphant Police Department, it fails to state a claim because "a police department is merely a subunit of the local government and is not amenable to suit under § 1983." *Golya v. Golya*, No. 05-100, 2007 WL 2301085, at *9 (M.D. Pa. Aug. 9, 2007).

fails to allege any facts that he perverted the legal process after process was initiated.  To state a claim for abuse of process under Pennsylvania law, "the plaintiff must allege that the defendant: (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designated, and (3) harm has been caused to the plaintiff." *Douris v. Schweiker*, 229 F. Supp. 2d 391, 404 (E.D. Pa. 2002).

> According to the Pennsylvania Supreme Court:
>
> The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it.  An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it . . . On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated . . . other than its proper effect and execution.  Malicious use of civil process has to do with the wrongful initiation of such process, *while abuse of civil process is concerned with a perversion of a process after it is issued*.

 *McGee v. Feege*, 517 Pa. 247, 253, 535 A.2d 1020,  1023 (1987) (citing *Publix Drug Co. v. Breyer Ice Cream Co.*, 347 Pa. 346, 350, 32 A.2d 413 (1943)) (internal citations omitted) (emphasis added).  "'There is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion.'" *Douris*, 229 F. Supp. 2d at 404 (quoting *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F.Supp. 19, 21 (E.D. Pa. 1992)).

Here, Plaintiffs fail to state a claim for abuse of process under Pennsylvania law.  In particular, the allegations against Officer Kline all encompass events that transpired before criminal proceedings commenced against Mrs. Sheare on November 21, 2010- the day with which she was charged with criminal trespass. (*Am. Compl.*, ¶ 62.)  Specifically, Plaintiffs allege that on November 17, 2010 Officer Kline called Mrs. Sheare and asked her to come to the police station. (*Id*. at ¶ 40.)  At the station, Officer Kline accused Mrs. Sheare of stealing the money, and he also informed her that he was good friends with Harry Ziniskie.

(*Id*. at ¶ 46.)  And, based on this information, Plaintiffs aver "that Defendant Kline *advanced criminal charges here* as an attempt to wrongfully recover money from the Plaintiff that was allegedly taken from the Zinskie home." (*Id*.)  These allegations are not that the legal process was abused *after* criminal proceedings were commenced against Mrs. Sheare. Instead, the Plaintiffs argue that the criminal proceedings were wrongfully or maliciously *initiated* without justification.  Thus, because Plaintiffs claim is based on the alleged improper commencement of criminal action against her and not on "the pervasion of process after it issued," Plaintiffs fail to state an abuse of process claim.  And, because the facts as alleged all relate to Officer Kline's conduct before the criminal charges were filed, no claim for abuse of process could be stated on these facts, and the abuse of process claim will be dismissed with prejudice.

## IV.    Intentional Infliction of Emotional Distress Claim

In order to state a claim for intentional infliction of emotional distress ("IIED") in Pennsylvania, the plaintiff must establish four elements: (1) the conduct of the defendant was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe. *See Walker v. N. Wales Borough*, 395 F. Supp. 2d 219, 232 (E.D. Pa. 2005) (citing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979)).  For a plaintiff to recover for IIED, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F. 2d 390, 395 (3d Cir.1988) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 366 Pa. Super. 551, 531 A. 2d 1122, 1125 (1987)).

While "mere allegations of criminal conduct are insufficient to establish that a person acted in an extreme or outrageous manner," *United States ex rel. Magid v. Wilderman*, No.

96-4346, 2005 WL 469590, at *5 (E.D. Pa. Feb. 28, 2005), and "the filing of false charges and false arrest are generally not found so extreme and outrageous," *Griffin v. Municipality of Kingston*, No. 08-2290, 2009 WL 1794775, at *11 (M.D. Pa. June 23, 2009), allegations that a plaintiff was arrested by officers, knowing that the accusations against the accused were false, and knowing that they lacked probable cause are "types of allegations that have survived a motion to dismiss in other cases in Pennsylvania." *Dempsey v. Bucknell Univ.*, No. 11-1679, 2012 WL 1569826, at *24 (M.D. Pa. May 3, 2012) (citing *Walker*, 395 F. Supp. 2d at 232; *Banyas v. Lower Bucks Hosp.*, 293 Pa. Super. 122, 437 A.2d 1236 (Pa. Super. 1981)).

Here, Mrs. Sheare alleges that Officer Kline commenced criminal charges against her knowing that they were false and without probable cause. (*Am. Compl.*, ¶¶ 51, 62.) And, as a result of these criminal accusations, Mrs. Sheare is alleged to have suffered severe distress. (*Id*. at ¶¶ 57-59, 83.)  While Mrs. Sheare will face a more exacting burden at later stages in this litigation, the allegations that Officer Kline commenced criminal proceedings against Mrs. Sheare knowing that the information was false and without probable cause are sufficient to support a claim that Officer Kline's conduct was extreme and outrageous. *See Dempsey*, 2012 WL 1569826, at *24.  And, although Mrs. Sheare will have to produce objective proof of emotional distress at summary judgment or trial, *see id.* (citing *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989)), these allegations at the motion to dismiss stage are sufficient to allow her to proceed on her IIED claim.  Thus, Officer Kline's motion to dismiss the IIED claim will be denied.

## V.     Loss of Consortium Claim

Defendants also seek dismissal of Mr. Sheare's loss of consortium claim because it is merely derivative of Mrs. Sheare's other claims.  A loss of consortium claim is intended

to compensate one for the "'loss of the services, society, and conjugal affection of one's spouse.'" *Adam C. v. Scranton Sch. Dist.*, No. Civ.A.07–532, 2011 WL 996171, at *7 (M.D. Pa. Mar. 7, 2011) (quoting *Smalls v. Pittsburgh–Corning Corp.*, 843 A.2d 410, 417 (Pa.Super. 2004)).  A claim for loss of consortium, however, is derivative of the validity of the injured spouse's claim. *See Jensen v. United States*, No. Civ.A.09–2977, 2009 WL 4117357, at *3 (E.D.Pa. Nov.24, 2009).  But, given that Mrs. Sheare's § 1983 false arrest and IIED claims will be permitted to proceed, Defendants' request to dismiss the derivative consortium claim will be denied. *See, e.g., Watson v. Haverford Police Dep't*, No. 10-6731, 2012 WL 1900629, at *18 (E.D. Pa. May 25, 2012).

## CONCLUSION

For the above stated reasons, Plaintiffs will be permitted to proceed on the § 1983 false arrest claim, the IIED claim, and the loss of consortium claim.  However, the *Monell* and abuse of process claims will be dismissed with prejudice.

An appropriate order follows.


 June 29, 2012                                                    /s/ A. Richard Caputo
Date                                                                  A. Richard Caputo
                                                                         United States District Judge